IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| OSVALDO PUMBA,<br><br>Plaintiff,<br><br>v.<br><br>STEVEN MILLER, KYLE RUSSEL, DOUGLAS METTE, and JOSHUA LEEDBETTER,<br><br>Defendants. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | CIVIL ACTION NO. 22-2050 |

**MEMORANDUM OPINION**

Smith, J. July 14, 2022

The *pro se* plaintiff, who is incarcerated in a county jail, has sought to leave to proceed *in forma pauperis* in this action under 42 U.S.C. § 1983, where he asserts that individuals employed at the county jail violated his constitutional rights. The plaintiff alleges that he has spent considerable time in disciplinary segregation at the county jail and, during this time, he was denied access to the electronic law library, he was not permitted to use a telephone, and he was placed in a cell without light, a table, and a chair.

Although the court will allow the plaintiff leave to proceed *in forma pauperis*, the court will dismiss the complaint because the plaintiff has failed to state a plausible constitutional violation. In particular, the plaintiff has failed to state a plausible First Amendment claim for a denial of access to the courts insofar as he was prohibited from accessing the electronic library because he has failed to allege an actual injury. As for his claim relating to the telephone, the plaintiff has failed to state a plausible claim because his allegations are conclusory in nature and lack sufficient detail. He also has failed to allege whether he had an alternative means of communicating with family or friends. Finally, the plaintiff's allegations about his cell fail to state

a plausible conditions-of-confinement claim because, *inter alia*, he failed to allege how he was harmed by the lack of a table or chair or provide details about the nature of the inadequate lighting in his cell.

## I. ALLEGATIONS AND PROCEDURAL HISTORY

The *pro se* plaintiff, Osvaldo Pumba ("Pumba"), filed an application for leave to proceed *in forma pauperis*, prisoner trust fund account statement, and proposed complaint, which the clerk of court docketed on May 20, 2022.[1] *See* Doc. Nos. 1–3. In the complaint, Pumba, who is convicted and serving time at the Lehigh County Jail ("LCJ"), names four individuals as defendants: (1) Steve Miller, the Warden of Treatment at LCJ ("Warden Miller"); (2) Douglas Mette, the Treatment Supervisor at LCJ ("Mette"); (3) Joshua Leedbetter, a LCJ case manager ("Leedbetter"); and (4) Kyle Russell, the Deputy Warden at LCJ ("Warden Russell").[2] *See* Compl. at ECF p. 1., Doc. No. 2.

Pumba appears to assert three categories of claims. For the first category, Pumba alleges that he has been in disciplinary segregation for approximately 15 months and, during this period, he asserts that he has been denied multiple requests to use the electronic law library "for [his] defense at court."[3] *See id.* at ECF p. 3. Pumba alleges that he needs "direct access" to the electronic

[1] Pumba has filed nine other complaints in this court. *See Pumba v. Lehigh Cnty. Jail, et al.*, Civ. A. No. 21-5585, Doc. No. 2; *Pumba v. Madrid, et al.*, Civ. A. No. 21-5639, Doc. No. 2; *Pumba v. Lehigh Cnty. Jail Admin., et al.*, Civ. A. No. 22-134, Doc. No. 2; *Pumba v. Lehigh Cnty. Jail Admin., et al.*, Civ. A. No. 22-137, Doc. No. 2; *Pumba v. Lehigh Cnty. Jail Admin., et al.*, Civ. A. No. 22-179, Doc. No. 2; *Pumba v. Maldonado, et al.*, Civ. A. No. 22-476, Doc. No. 3; *Pumba v. Cmwlth. of Pa., et al.*, Civ. A. No. 22-2076, Doc. No. 3; *Pumba v. Knappenberger, et al.*, Civ. A. No. 22-2078, Doc. No. 3; *Pumba v. Kowal, et al.*, Civ. A. No. 22-2082, Doc. No. 2. This memorandum opinion addresses only Civil Action No. 22-2050.

Additionally, for reasons unknown, Pumba filed a second application for leave to proceed *in forma pauperis* and prisoner trust fund account statement which the clerk of court docketed on June 22, 2022. *See* Doc. Nos. 5, 6. The court has considered the *in forma pauperis* applications and will collectively refer to them as the "IFP Application".

[2] It appears that Pumba misspells Warden Russell's last name as "Russel". The court will use the appropriate spelling in this opinion.

[3] Pumba has attached to the complaint a copy of a grievance form he appears to have submitted to Mette on March 30, 2022. *See* Compl. at ECF p. 5. In this document, Mette informed Pumba that according to LCJ disciplinary segregation housing unit policy, inmates in disciplinary segregation do not have direct access to the electronic law library. *See id.* If an inmate in disciplinary segregation requires legal information, they must request legal documents

law library using a computer or a tablet because it is more "efficient" for him to do his legal research this way. *See id.*

For the second category, Pumba further alleges that LCJ staff did not timely and adequately respond to his requests for legal documents. *See id.* at ECF p. 4. For instance, Pumba claims he waited "weeks and weeks" for Mette to respond to his requests for legal documents and, on multiple occasions, Leedbetter failed to provide Pumba with the documents he requested. *See id.* Pumba also avers that Leedbetter repeatedly denied Pumba the use of a telephone, allegedly pursuant to a policy that restricts telephone use for inmates in disciplinary segregation. *See id.*

Concerning the final category, Pumba alleges that when he was placed in disciplinary segregation, Warden Miller placed him in a cell without light, a chair, or a table. *See id.* at ECF pp. 4, 6. Pumba complained about this issue in a March 30, 2022 grievance, where he stated that he had not had light, a chair, or a table in his prison cell for five months. *See id.* at ECF p. 6.

Based on these facts, Pumba appears to be asserting claims under 42 U.S.C. § 1983 for violations of his First, Eighth, and Fourteenth Amendments to the United States Constitution. *See id.* at ECF p. 3. Pumba is seeking $15 million in damages. *See id.*

## II. DISCUSSION

### A. <u>The IFP Application</u>

Regarding applications to proceed *in forma pauperis*,

> any court of the United States may authorize the commencement, prosecution or defense of any suit, action or proceeding, civil or criminal, or appeal therein, without prepayment of fees or security therefor, by a person who submits an affidavit that includes a statement of all assets such prisoner possesses that the person is unable to pay such fees or give security therefor.

28 U.S.C. § 1915(a)(1). This statute

---

from LCJ staff, who then print the documents for the inmate. *See id.* Apparently, inmates in disciplinary segregation are limited to 50 pages of legal information per week. *See id.*

> "is designed to ensure that indigent litigants have meaningful access to the federal courts." *Neitzke v. Williams,* 490 U.S. 319, 324, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). Specifically, Congress enacted the statute to ensure that administrative court costs and filing fees, both of which must be paid by everyone else who files a lawsuit, would not prevent indigent persons from pursuing meaningful litigation. *Deutsch*[ *v. United States*, 67 F.3d 1080, 1084 (3d Cir. 1995)]. Toward this end, § 1915(a) allows a litigant to commence a civil or criminal action in federal court in [sic] *forma pauperis* by filing in good faith an affidavit stating, among other things, that he is unable to pay the costs of the lawsuit. *Neitzke,* 490 U.S. at 324, 109 S.Ct. 1827.

*Douris v. Middletown Twp.*, 293 F. App'x 130, 131–32 (3d Cir. 2008) (per curiam) (footnote omitted).

The litigant seeking to proceed *in forma pauperis* must establish that the litigant is unable to pay the costs of suit. *See Walker v. People Express Airlines, Inc.*, 886 F.2d 598, 601 (3d Cir. 1989) ("Section 1915 provides that, in order for a court to grant *in forma pauperis* status, the litigant seeking such status must establish that he is unable to pay the costs of his suit."). "In this Circuit, leave to proceed *in forma pauperis* is based on a showing of indigence. [The court must] review the affiant's financial statement, and, if convinced that he or she is unable to pay the court costs and filing fees, the court will grant leave to proceed *in forma pauperis*." *Deutsch*, 67 F.3d at 1084 n.5 (internal citations omitted).

Here, after reviewing the IFP Application, it appears that Pumba is unable to prepay the fees to commence this civil action. Therefore, the court will grant him leave to proceed *in forma pauperis*.[4]

**B. <u>Standard of Review – Screening of Complaint Under 28 U.S.C. § 1915</u>**

Because the court has granted Pumba leave to proceed *in forma pauperis*, the court must engage in the second part of the two-part analysis and examine whether the complaint is frivolous,

[4] As Pumba is a prisoner, he must fully pay the filing fee in installments due to the Prison Litigation Reform Act. *See* 28 U.S.C. § 1915(b).

malicious, fails to state a claim upon which relief can be granted, or asserts a claim against a defendant immune from monetary relief. *See* 28 U.S.C. § 1915(e)(2)(B)(i)–(iii) (providing that "[n]otwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that-- . . . **(B)** the action or appeal—**(i)** is frivolous or malicious; **(ii)** fails to state a claim on which relief may be granted; or **(iii)** seeks monetary relief against a defendant who is immune from such relief"). A complaint is frivolous under section 1915(e)(2)(B)(i) if it "lacks an arguable basis either in law or fact," *Neitzke*, 490 U.S. at 325, and is legally baseless if it is "based on an indisputably meritless legal theory." *Deutsch*, 67 F.3d at 1085. As for whether a complaint is malicious,

> [a] court that considers whether an action is malicious must, in accordance with the definition of the term "malicious," engage in a subjective inquiry into the litigant's motivations at the time of the filing of the lawsuit to determine whether the action is an attempt to vex, injure or harass the defendant.

*Id.* at 1086. "[A] district court may dismiss a complaint as malicious if it is plainly abusive of the judicial process or merely repeats pending or previously litigated claims." *Brodzki v. CBS Sports*, Civ. No. 11-841, 2012 WL 125281, at *1 (D. Del. Jan. 13, 2012).

Concerning the analysis under section 1915(e)(2)(B)(ii), the standard for dismissing a complaint for failure to state a claim pursuant to this subsection is identical to the legal standard used when ruling on motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999) (applying Rule 12(b)(6) standard to dismissal for failure to state claim under section 1915(e)(2)(B)). Thus, to survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 556 (citation omitted).

In addressing whether a *pro se* plaintiff's complaint fails to state a claim, the court must liberally construe the allegations set forth in the complaint. *See Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) ("At this early stage of the litigation, we accept the facts alleged [in the *pro se*] complaint as true, draw all reasonable inferences in [the *pro se* plaintiff's] favor, and ask only whether that complaint, liberally construed, . . . contains facts sufficient to state a plausible . . . claim." (citation, internal quotation marks, and all original alterations omitted)); *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) ("We construe Vogt's pro se filings liberally. This means we remain flexible, especially 'when dealing with imprisoned pro se litigants' like Vogt." (internal citations omitted) (quoting *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244–45 (3d Cir. 2013))); *Higgs v. Att'y Gen.*, 655 F.3d 333, 339–40 (3d Cir. 2011) (explaining that "when presented with a *pro se* litigant, we have a special obligation to construe his complaint liberally" (citation and internal quotation marks omitted)). Yet, conclusory allegations will not suffice. *See Iqbal*, 556 U.S. at 678 ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" (quoting *Twombly*, 550 U.S. at 555)).

Additionally, when construing a *pro se* plaintiff's complaint, the court will "'apply the relevant legal principle even when the complaint has failed to name it.'" *Vogt*, 8 F.4th at 185 (quoting *Mala*, 704 F.3d at 244). However, *pro se* litigants "'cannot flout procedural rules—they must abide by the same rules that apply to all other litigants.'" *Id.* (quoting *Mala*, 704 F.3d at 245).

**C. <u>Analysis</u>**

Pumba asserts that the defendants violated his rights under the First, Eighth, and Fourteenth Amendments and is seeking relief for those violations under 42 U.S.C. § 1983. This statute provides in pertinent part as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to

> be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

42 U.S.C. § 1983. When attempting to establish a claim under section 1983, a plaintiff must allege and prove that a "person" deprived the plaintiff of a constitutional right while acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 49 (1988) ("To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law.").

**1. Access to Courts Claim**

Pumba alleges that his rights under the First and Fourteenth Amendments were violated when he was unable to use the electronic law library while placed in disciplinary segregation and when Mette and Leedbetter failed to timely respond (or respond at all) to his requests for printed legal documents. This type of claim, where the plaintiff asserts that there are unconstitutional restrictions on their access to the prison law library, is considered an "access-to-the-courts" claim under the First Amendment. *See Diaz v. Holder*, 532 F. App'x 61, 63 (3d Cir. 2013) (per curiam) ("Diaz raised an access-to-the-courts claim in his amended complaint, alleging that the prison law library did not carry Massachusetts legal material—and that, as a result, his motion for a new trial was untimely filed.").

Incarcerated individuals have a constitutional right to "adequate, effective, and meaningful" access to the courts. *Bounds v. Smith*, 430 U.S. 817, 822 (1977). To prevail on an alleged denial of access to the courts claim, a plaintiff "is required to show that the denial of access caused actual injury." *Jackson v. Whalen*, 568 F. App'x 85, 87 (3d Cir. 2014) (per curiam) (quoting *Lewis v. Casey*, 518 U.S. 343, 350 (1996)). In other words, a prisoner claiming that a defendant

denied him access to the courts must allege an injury traceable to the conditions of which the prisoner complains. *See Diaz*, 532 F. App'x at 63 (affirming district court's dismissal of *pro se* prisoner's denial of access to courts claims where prisoner failed to tie alleged deficiencies in library to harm in underlying action); *Williams v. Price*, 25 F. Supp. 2d 605, 616 (W.D. Pa. 1997) (explaining that plaintiff seeking to assert denial of access to courts claim must "show actual injury to a specific legal claim which sought to vindicate 'basic constitutional rights'" (quoting *Lewis*, 518 U.S. at 354)). In general, an actual injury occurs when a prisoner demonstrates that the prisoner lost a "nonfrivolous" and "arguable" claim because a defendant denied the prisoner access to the courts. *Christopher v. Harbury*, 536 U.S. 403, 415 (2002). Thus, "[t]he underlying cause of action, . . . is an element that must be described in the complaint." *Id.* Furthermore, the right to access the courts may be satisfied if the plaintiff has an attorney. *See Diaz*, 532 F. App'x at 63 ("The right [of access to the courts] can be satisfied . . . by appointing Diaz an attorney." (citing *Peterkin v. Jeffes*, 855 F.2d 1021, 1042 (3d Cir. 1988) and *Degrate v. Godwin*, 84 F.3d 768, 768–69 (5th Cir. 1996))); *see also Prater v. City of Philadelphia*, 542 F. App'x 135, 137 n.4 (3d Cir. 2013) (per curiam) ("We also agree that Prater's inability to access the library as much as he would have liked does not state an access-to-courts claim because appointment of counsel is sufficient to provide a pretrial detainee with 'meaningful access to courts.'" (citations omitted)).

Pumba has not stated a plausible access to the courts claim because he has not alleged an actual injury resulting from his inability to use the electronic law library or from his difficulty in obtaining printing legal materials from Mette or Leedbetter. Pumba has not described anywhere in his complaint what "nonfrivolous" or "arguable" claim he has lost due to his inability to access the law library or its materials. *Harbury*, 536 U.S. at 415. Without allegations of an actual injury, any claim based on the denial of his ability to use the prison law library is not plausible. *See Talley v.*

*Varner*, 786 F. App'x 326, 328 (3d Cir. 2019) (per curiam) (affirming district court's conclusion that there was no denial of access to courts where inmate, *inter alia*, failed to allege what underlying nonfrivolous claims he was unable to pursue). Accordingly, the court will dismiss Pumba's access to courts claim under the First and Fourteenth Amendments.

**2. Claims Based on Use of Telephone**

Pumba alleges that Leedbetter violated his First and Fourteenth Amendment rights when he prohibited Pumba from using the telephone while he was placed on disciplinary segregation. With regard to an inmate's use of the telephone, although prisoners may have a limited First Amendment right to communicate with family and friends, *see Overton v. Bazzetta*, 539 U.S. 126, 131–32 (2003), "prisoners 'ha[ve] no right to unlimited telephone use, and reasonable restrictions on telephone privileges do not violate their First Amendment rights." *Almahdi v. Ashcroft*, 310 F. App'x 519, 522 (3d Cir. 2009) (per curiam) (quoting *Washington v. Reno*, 35 F.3d 1093, 1099–00 (6th Cir. 1994)). "[A] prisoner's right to telephone access is 'subject to rational limitations in the face of legitimate security interests of the penal institution.'" *Id.* (quoting *Strandberg v. City of Helena*, 791 F.2d 744, 747 (9th Cir. 1986)). Moreover, where there are alternative means of communicating with persons outside of the prison, such as in person visits or mail, the restrictions on telephone use are more likely to be considered reasonable. *See id.* ("Despite Almahdi's statement to the contrary, regulations limiting telephone use by inmates have been routinely sustained as reasonable. Moreover, in this case, the telephone restrictions were implemented because Almahdi was under investigation for telephone abuse, and he had already committed two telephone-related infractions. Under these facts, we cannot conclude that the restrictions were an unreasonable method of furthering the penological interests in maintaining security and discipline. Moreover, Almahdi makes no assertion—and there is no evidence—that he lacked alternative

means of communicating with persons outside the prison." (internal citation omitted)); *Ortiz-Medina v. Bradley*, No. 1:19-cv-2133, 2020 WL 362697, at *5 (M.D. Pa. Jan. 22, 2020) (explaining that "inmates "ha[ve] no right to unlimited telephone use." [W]here a prisoner has access to alternative means of communicating with family and friends outside of prison, such as via the mail or in person visits, restrictions on telephone use are viewed as less serious and are more likely to be found reasonable." (alterations in original) (citations and internal quotation marks omitted)); *Graf v. Lanigan*, Civ. No. 14-2613 (RBK) (AMD), 2016 WL 324946, at *2 (D.N.J. Jan. 27, 2016) ("Thus, as Mr. Graf has alternative means to communicate with his family and friends, even those who do not have a landline telephone number, his First Amendment rights are not violated by the NJDOC's policy." (citation omitted)).

Here, Pumba has failed to state a plausible claim based on LCJ's telephone policy for inmates placed in disciplinary segregation. He has merely stated in generalized and conclusory terms that his rights were violated because he was not allowed to use the telephone. Pumba fails to allege when and how often he requested to use the telephone, and whether his requests were denied. In addition, Pumba fails to provide any details about the LCJ's policy itself, including whether the jail instituted an absolute ban on telephone use by inmates in disciplinary segregation or whether there were instead restrictions on time and usage. Finally, Pumba fails to include any factual allegations about whether he had an alternative means of communicating with family and friends. Without this additional information, the court is unable to discern a plausible constitutional violation. *Accord Aruanno v. Johnson*, 568 F. App'x 194, 195 (3d Cir. 2014) (per curiam) (holding that conclusory allegations "concerning [prisoner's] lack of phone access to friends and family" failed to state claim for relief). Therefore, the court will dismiss Pumba's First Amendment claim based on his inability to use the telephone while in disciplinary segregation.

### 3. Claims Based on Conditions of Confinement

Pumba alleges that Warden Miller placed him in a disciplinary segregation unit prison cell that had no light, chairs, or a table, and that he has been deprived of these things for over five months. The court understands Pumba to be asserting claims based on the conditions of his confinement under the Eighth Amendment.

Unconstitutional punishment, be it under the Eighth Amendment applicable to convicted prisoners or the Fourteenth Amendment applicable to pretrial detainees, typically includes both objective and subjective components. *Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007). In general, "[t]o determine whether prison officials have violated the Eighth Amendment, [courts] apply a two-prong test: (1) the deprivation must be 'objectively, sufficiently serious; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities'; and (2) the prison official must have been 'deliberate[ly] indifferen[t] to inmate health or safety.'" *Porter v. Pa. Dep't of Corr.*, 974 F.3d 431, 441 (3d Cir. 2020) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). Regarding the first prong, necessities include food, clothing, shelter, medical care, and reasonable safety. *See Tillman v. Lebanon Cnty. Corr. Facility*, 221 F.3d 410, 418 (3d Cir. 2000) ("[W]hen the government takes a person into custody against his or her will, it assumes responsibility for satisfying basic human needs such as food, clothing, shelter, medical care, and reasonable safety." (citing *DeShaney v. Winnebago Co. Dep't of Soc. Servs.*, 489 U.S. 189, 199–200 (1989))). As for the second prong, a prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. Only conditions of confinement that "cause inmates to ensure such genuine privations and hardship over

an extended period of time" violate the Eighth Amendment. *Hubbard v. Taylor*, 538 F.3d 229, 233 (3d Cir. 2008) (citation and internal quotation marks omitted).

In this case, Pumba's allegations fails to state a plausible Eighth Amendment claim against Warden Miller. Although Pumba states that his cell lacked a chair or a table for over five months, he fails to allege how the denial of a table and chair raised to the level of deprivation of a life necessity such as food, clothing, shelter, medical care, and reasonable safety. Pumba also fails to allege how he was harmed by the lack of table and chair in his cell or that Warden Miller or any other prison official knew of a risk of harm to Pumba but was deliberately indifferent to that risk.

As for the deprivation of light, this can, in some circumstances, constitute a constitutional violation. *See Love v. Dep't of Corr.*, Civ. A. No. 13-1050 (SDW), 2014 WL 46776, at *4–5 (D.N.J. Jan. 6, 2014) (noting that "[s]ome federal courts have held that the constitutional requirement of adequate shelter for a prisoner includes adequate lighting" (citing *Hoptowitz v. Spellman*, 753 F.2d 779, 783 (9th Cir. 1985))). Like other prison conditions, the "nature and duration of the deprivation are critical in determining whether the condition" forms the basis of a constitutional violation. *Id.* Although Pumba states that he was without light for five months, he had provided no details about the nature of the alleged inadequate lighting, including whether he was able to access some light or experienced complete darkness, and how he was harmed by it. Pumba has also not alleged that Warden Miller or any other prison official was aware of the inadequate lighting and was nevertheless deliberately indifferent to the harm it may have caused Pumba. Absent these additional details and context related to these alleged deprivations, Pumba has not adequately stated plausible conditions of confinement claims. Accordingly, the court will dismiss Pumba's Eighth Amendment claims.

**4. Claims Against Warden Russell**

Although Pumba has named Warden Russell as a defendant in the complaint, he alleges no facts about his involvement in the incidents he describes. Individuals must have personal involvement in the unconstitutional conduct to be liable. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) ("A defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*."). Generalized allegations that a supervisory defendant is "in charge of" or "responsible for" an office or facility are insufficient to allege personal involvement in an underlying constitutional violation. *Saisi v. Murray*, 822 F. App'x 47, 48 (3d Cir. 2020).

Pumba has also failed to allege a basis for supervisory liability against Warden Russell. He has not alleged that Warden Russell acted "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014) (alteration in original) (quoting *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juv. Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004)), *rev'd on other grounds by Taylor v. Barkes*, 135 S. Ct. 2042 (2015). Pumba has also not asserted that Warden Russell "participated in violating [his] rights, directed others to violate them, or, as the person in charge, had knowledge of an acquiesced in the subordinate's unconstitutional conduct." *Id.* Therefore, the court will also dismiss Pumba's claims against Warden Russell.

**III. CONCLUSION**

For the foregoing reasons, the court will grant Pumba leave to proceed *in forma pauperis*. The court will also dismiss the complaint without prejudice pursuant to 28 U.S.C. §

1915(e)(2)(B)(ii). Considering Pumba's *pro se* status, the court will give him the option of filing an amended complaint if he can address the defects the court has noted as to his claims.[5]

The court will enter a separate order.

BY THE COURT:

/s/ *Edward G. Smith*
EDWARD G. SMITH, J.

[5] A district court should generally provide a *pro se* plaintiff with leave to amend unless amending would be inequitable or futile. *See Grayson v. Mayview St. Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002) (stating general rule). Also, "in civil rights cases district courts must offer amendment—irrespective of whether it is requested—when dismissing a case for failure to state a claim unless doing so would be inequitable or futile." *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 252 (3d Cir. 2007).