IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| OSVALDO PUMBA, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION NO. 22-2050 |
| | : | |
| v. | : | |
| | : | |
| STEVEN MILLER, KYLE RUSSELL, DOUGLAS METTE, and JOSHUA LEEDBETTER, | : : : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM OPINION

Smith, J.                                                                                                        October 20, 2022

The *pro se* prisoner has filed an action in which he asserts claims for constitutional violations under 42 U.S.C. § 1983 based on the conditions of his confinement and the alleged denial of access to courts during his time spent in disciplinary segregation. The court previously granted the prisoner's request for leave to proceed *in forma pauperis* and dismissed the complaint without prejudice after screening it under 28 U.S.C. § 1915(e)(2)(B). The prisoner has now filed an amended complaint, which the court has screened again pursuant to section 1915(e)(2)(B).

Unlike the original complaint, the amended complaint contains plausible claims for violations of the prisoner's First Amendment rights based on his restricted use of the telephone while in disciplinary segregation and his claims based on the conditions of his confinement while in disciplinary segregation. The court will also dismiss with prejudice any access-to-courts claims because the prisoner has again failed to state a plausible claim for relief, and the court finds that any further amendment would be futile.

## I.    ALLEGATIONS AND PROCEDURAL HISTORY

The *pro se* plaintiff, Osvaldo Pumba ("Pumba"), commenced this action by filing an application for leave to proceed *in forma pauperis* ("IFP Application"), complaint, and prisoner trust fund account statement, which the clerk of court docketed on May 20, 2022.[1] *See* Doc. Nos. 1–3. In his initial complaint, Pumba named the following defendants: (1) Steve Miller, the Warden of Treatment at the Lehigh County Jail ("Warden Miller");[2] (2) Douglas Mette, a treatment supervisor at LCJ ("Mette"); (3) Joshua Leedbetter, a case manager at LCJ; and (4) Kyle Russell, the Deputy Warden at LCJ ("Warden Russell"). *See* Compl. at ECF p. 1, Doc. No. 2.

Regarding the allegations in the complaint, Pumba alleged that he was placed in disciplinary segregation for over 15 months, and while there, was denied multiple requests to use the electronic law library. *See id.* at ECF p. 5. Pumba also alleged that LCJ staff did not timely and adequately respond to his requests for legal documents. *See id.* at ECF p. 4. Additionally, Pumba alleged that while in disciplinary segregation, he was placed in a cell without light, a chair, or a table. *See id.* at ECF p. 3. He further alleged that his use of the telephone has been restricted. *See id.* at ECF p. 4. Based on these facts, Pumba asserted an access-to-courts claim under the First Amendment and a conditions-of-confinement claim under the Eighth Amendment. *See id.*

In a July 14, 2022 memorandum opinion and order, the court granted Pumba's IFP Application and dismissed the complaint upon screening pursuant to 28 U.S.C. § 1915(e)(2)(B)

---

[1] Pumba has filed 13 other complaints in this court. *See Pumba v. Lehigh Cnty. Jail, et al.*, Civ. A. No. 21-5585, Doc. No. 2; *Pumba v. Madrid, et al.*, Civ. A. No. 21-5639, Doc. No. 2; *Pumba v. Lehigh Cnty. Jail Admin., et al.*, Civ. A. No. 22-134, Doc. No. 2; *Pumba v. Lehigh Cnty. Jail Admin., et al.*, Civ. A. No. 22-137, Doc. No. 2; *Pumba v. Lehigh Cnty. Jail Admin., et al.*, Civ. A. No. 22-179, Doc. No. 2; *Pumba v. Maldonado, et al.*, Civ. A. No. 22-476, Doc. No. 3; *Pumba v. Miller., et al.*, Civ. A. No. 22-2050, Doc. No. 2; *Pumba v. Knappenberger, et al.*, Civ. A. No. 22-2078, Doc. No. 3; *Pumba v. Kowal, et al.*, Civ. A. No. 22-2082, Doc. No. 2; *Pumba v. Sidor, et al.*, Civ. A. No. 22-2900, Doc. No. 2; *Pumba v. Volpe, et al.*, Civ. A. No. 22-2929, Doc. No. 2; *Pumba v. Kowal, et al.*, Civ. A. No. 22-2940, Doc. No. 2; and *Pumba v. Godfrey, et al.*, Civ. A. No. 22-2952, Doc. No. 2. This memorandum opinion addresses only Civil Action No. 22-2050.
[2] The court will hereafter refer to the Lehigh County Jail as "LCJ".

for failure to state a claim. *See* July 14, 2022 Mem. Op. at 1–2, 13–14, Doc. No. 7; July 14, 2022 Order at 1, 2, Doc. No. 8. The court also dismissed without prejudice Pumba's access-to-courts claim, First Amendment claim based on restrictions to his telephone use, Eighth Amendment conditions-of-confinement claim, and claims against Warden Russell. *See* July 14, 2022 Mem. Op. at 7–13; July 14, 2022 Order at 2. The court provided Pumba with 30 days to file an amended complaint, and he timely filed an amended complaint naming the same defendants as the defendants named in the original complaint: Warden Miller; Mette; Leedbetter; and Warden Russell. *See* Am. Compl. at ECF p. 1, Doc. No. 9.[3]

In the amended complaint, Pumba alleges that he was in disciplinary segregation from January 2021 through July 2022. *See id.* at ECF pp. 4–5. He further alleges that he was a pretrial detainee during approximately four of those months, from late January 2021 through April 19, 2021.[4] While a pretrial detainee, he made multiple requests to Mette to use the law library "to prepare for [his] defense" of his criminal matter. *See* Am. Compl. Add. at ECF p. 1. Pumba also alleges that "most of the time" Mette and Leedbetter failed to provide Pumba with "what [he] really need[ed] as far as relevant cases" and that they "intentionally ignore[d his] requests by not responding" or not providing him with "50 pages of law material." *Id.* at ECF p. 3. Pumba states that his inability to access the electronic law library and difficulty in obtaining printed legal materials from Mette and Leedbetter "actually injured" him because he "would not [have been]

---

[3] Pumba sent his amended complaint to the court in two separate envelopes. Thus, half of the amended complaint is docketed at Doc. No. 9 and the other half is docketed at Doc. No. 11. To hopefully avoid any confusion, the court refers to Doc. No. 9 as Pumba's amended complaint ("Am. Compl.") and Doc. No. 11 as the addendum to the amended complaint ("Am. Compl. Add.").

[4] Review of the public docket in *Commonwealth v. Pumba*, No. CP-39-CR-363-2021 (Lehigh Cnty. Ct. Com. Pl.), reveals that on April 20, 2021, the trial court imposed a sentence of 24 months' incarceration on Pumba for the crimes of criminal mischief and harassment. *See* Docket, *Commonwealth v. Pumba*, No. CP-39-CR-363-2021 (Lehigh Cnty. Ct. Com. Pl.), *available at*: https://ujsportal.pacourts.us/Report/CpDocketSheet?docketNumber=CP-39-CR-0000363-2021&dnh=6O5yowHRYGVkDW1mMU6nZQ%3D%3D ("Docket"). The docket also reflects that counsel represented Pumba during these legal proceedings. *See id.*

3

sentenced to 23 months nor . . . incarcerated for this long [of a] time." *Id.* at ECF p. 2. He also states that if he had "access to courts," he would have "file[d] motions" to "have the case dismissed." *Id.* at ECF p. 4.

Pumba also alleges that he has been in disciplinary segregation for over 17 months, "without a visit, phone calls, or other means of communicating with family and friends." *Id.* at ECF p. 5. He was allegedly placed on communication restrictions "with no means of sending or receiving" mail and no alternative means of communicating with friends and family outside of the prison. *Id.* He states that he has "multiple times" requested Leedbetter to give him a "visit or phone call or mail" and that Leedbetter "simply denies" the requests every time. *Id.* Pumba alleges that he "tried to contact [Warden] Russell about it . . . because [he] need[s] to hear from family and friends." *Id.* at ECF p. 5.

Finally, Pumba alleges that Warden Miller, with Warden Russell's consent, "intentionally" placed Pumba in a "comple[tely] dark cell for five months with no heat[,] no light," and no chair or table. *Id.* at ECF p. 7; Am. Compl. at ECF p. 4. The "punishment cell" is allegedly a "freezing" cold cell with "no heat in the middle of the winter." Am. Compl. App. at ECF p. 7. Pumba states that from "time to time they would remove [his] mattress and let [him] sleep on the floor or on a metal bunk with no sheets or blankets in a dark [and freezing] cell." *Id.* Pumba alleges that, because of his time in disciplinary confinement and in the punishment cell, he suffered emotional distress and PTSD." Am. Compl. at ECF p. 5. For relief, he seeks fifteen million dollars.[5] *See id.*

---

[5] Pumba alleges only emotional distress in the amended complaint. "A prisoner may not bring a federal civil action for damages for mental or emotional injury suffered while in custody absent a showing of physical injury." *Tate v. Wiggins*, 805 F. App'x 159, 163 (3d Cir. 2020) (per curiam) (citing 42 U.S.C. § 1997e(e)). Nevertheless, the physical injury requirement (in 42 U.S.C. § 1997e(e)) does not affect a prisoner's ability to seek nominal or punitive damages for violations of his constitutional rights since "[c]laims seeking nominal or punitive damages are typically not 'for' mental or emotional injury but rather 'to vindicate constitutional rights' or 'to deter or punish egregious violations of constitutional rights,' respectively." *Mitchell v. Horn*, 318 F.3d 523, 533 (3d Cir. 2003) (citing *Allah v. Al-Hafeez*, 226 F.3d 247, 252 (3d Cir. 2000)). Because Pumba has not alleged any physical injury from the defendants' alleged unconstitutional conduct, he is limited to seeking only nominal or punitive damages.

## II.     DISCUSSION

### A.     Standard of Review – Screening of Complaint Under 28 U.S.C. § 1915

Because Pumba is proceeding *in forma pauperis*, the court must examine whether the amended complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or asserts a claim against a defendant immune from monetary relief. *See* 28 U.S.C. § 1915(e)(2)(B)(i)–(iii) (providing that "[n]otwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that-- . . . **(B)** the action or appeal—**(i)** is frivolous or malicious; **(ii)** fails to state a claim on which relief may be granted; or **(iii)** seeks monetary relief against a defendant who is immune from such relief"). A complaint is frivolous under section 1915(e)(2)(B)(i) if it "lacks an arguable basis either in law or fact," *Neitzke*, 490 U.S. at 325, and is legally baseless if it is "based on an indisputably meritless legal theory." *Deutsch*, 67 F.3d at 1085. As for whether an operative complaint is malicious,

> [a] court that considers whether an action is malicious must, in accordance with the definition of the term "malicious," engage in a subjective inquiry into the litigant's motivations at the time of the filing of the lawsuit to determine whether the action is an attempt to vex, injure or harass the defendant.

*Id.* at 1086. "[A] district court may dismiss a complaint as malicious if it is plainly abusive of the judicial process or merely repeats pending or previously litigated claims." *Brodzki v. CBS Sports*, Civ. No. 11-841, 2012 WL 125281, at *1 (D. Del. Jan. 13, 2012).

Concerning the analysis under section 1915(e)(2)(B)(ii), the standard for dismissing a complaint for failure to state a claim pursuant to this subsection is identical to the legal standard used when ruling on motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999) (applying Rule 12(b)(6) standard to dismissal for failure to state claim under section 1915(e)(2)(B)). Thus, to survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 556 (citation omitted).

In addressing whether a *pro se* plaintiff's complaint fails to state a claim, the court must liberally construe the allegations set forth in the complaint. *See Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) ("At this early stage of the litigation, we accept the facts alleged [in the *pro se*] complaint as true, draw all reasonable inferences in [the *pro se* plaintiff's] favor, and ask only whether that complaint, liberally construed, . . . contains facts sufficient to state a plausible . . . claim." (citation, internal quotation marks, and all original alterations omitted)); *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) ("We construe Vogt's pro se filings liberally. This means we remain flexible, especially 'when dealing with imprisoned pro se litigants' like Vogt." (internal citations omitted) (quoting *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244–45 (3d Cir. 2013))); *Higgs v. Att'y Gen.*, 655 F.3d 333, 339–40 (3d Cir. 2011) (explaining that "when presented with a *pro se* litigant, we have a special obligation to construe his complaint liberally" (citation and internal quotation marks omitted)). Yet, conclusory allegations will not suffice. *See Iqbal*, 556 U.S. at 678 ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" (quoting *Twombly*, 550 U.S. at 555)).

Additionally, when construing a *pro se* plaintiff's complaint, the court will "'apply the relevant legal principle even when the complaint has failed to name it.'" *Vogt*, 8 F.4th at 185 (quoting *Mala*, 704 F.3d at 244). However, *pro se* litigants "'cannot flout procedural rules—they must abide by the same rules that apply to all other litigants.'" *Id.* (quoting *Mala*, 704 F.3d at 245).

6

### B. Analysis

Pumba asserts that the defendants violated his rights under the United States Constitution and is seeking relief for those violations under 42 U.S.C. § 1983. This statute provides in pertinent part as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

42 U.S.C. § 1983. When attempting to establish a claim under section 1983, a plaintiff must allege and prove that a "person" deprived the plaintiff of a constitutional right while acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 49 (1988) ("To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law.").

#### 1. Access-to-Courts Claim

Pumba alleges that his rights under the First Amendment was violated when he was unable to use the electronic law library while placed in disciplinary segregation and when Mette and Leedbetter failed to provide him with the printed legal materials he requested. This type of claim, where a plaintiff asserts that there are unconstitutional restrictions on their access to the prison law library, is considered an "access-to-the-courts" claim under the First Amendment. *See Diaz v. Holder*, 532 F. App'x 61, 63 (3d Cir. 2013) (per curiam) ("Diaz raised an access-to-the-courts claim in his amended complaint, alleging that the prison law library did not carry Massachusetts legal material—and that, as a result, his motion for a new trial was untimely filed.").

Incarcerated individuals have a constitutional right to "adequate, effective, and meaningful" access to the courts. *Bounds v. Smith*, 430 U.S. 817, 822 (1977). To prevail on an alleged denial of access to the courts claim, a plaintiff "is required to show that the denial of access caused actual injury." *Jackson v. Whalen*, 568 F. App'x 85, 87 (3d Cir. 2014) (per curiam) (quoting *Lewis v. Casey*, 518 U.S. 343, 350 (1996)). In other words, a prisoner claiming that a defendant denied him access to the courts must allege an injury traceable to the conditions of which the prisoner complains. *See Diaz*, 532 F. App'x at 63 (affirming district court's dismissal of *pro se* prisoner's denial of access to courts claims where prisoner failed to tie alleged deficiencies in library to harm in underlying action); *Williams v. Price*, 25 F. Supp. 2d 605, 616 (W.D. Pa. 1997) (explaining that plaintiff seeking to assert denial of access to courts claim must "show actual injury to a specific legal claim which sought to vindicate 'basic constitutional rights'" (quoting *Lewis*, 518 U.S. at 354)). In general, an actual injury occurs when a prisoner demonstrates that the prisoner lost a "nonfrivolous" and "arguable" claim because a defendant denied the prisoner access to the courts. *Christopher v. Harbury*, 536 U.S. 403, 415 (2002). Thus, "[t]he underlying cause of action, . . . is an element that must be described in the complaint." *Id.* Furthermore, the right to access the courts may be satisfied if the plaintiff has an attorney. *See Diaz*, 532 F. App'x at 63 ("The right [of access to the courts] can be satisfied . . . by appointing Diaz an attorney." (citing *Peterkin v. Jeffes*, 855 F.2d 1021, 1042 (3d Cir. 1988) and *Degrate v. Godwin*, 84 F.3d 768, 768–69 (5th Cir. 1996))); *see also Prater v. City of Philadelphia*, 542 F. App'x 135, 137 n.4 (3d Cir. 2013) (per curiam) ("We also agree that Prater's inability to access the library as much as he would have liked does not state an access-to-courts claim because appointment of counsel is sufficient to provide a pretrial detainee with 'meaningful access to courts.'" (citations omitted)).

As with the original complaint, Pumba has again failed to plead a plausible access-to-the-courts claim. Pumba alleges that he suffered actual injury because he lost his criminal case and received a 23-month sentence. He further asserts that if he had access to the law library and the printed legal materials he requested, he would have filed a motion to have his criminal case dismissed.

Pumba's alleged injury relates entirely to the outcome of his criminal matter. However, the public docket reveals that Pumba had legal counsel during the pendency of these criminal proceedings. *See* Docket. Pumba cannot state a plausible claim for denial of access to the courts because counsel represented him during his criminal case. *See Prater v. City of Philadelphia*, 542 F. App'x 135, 137 n.4 (3d Cir. 2013) (per curiam) ("We also agree that Prater's inability to access the library as much as he would have liked does not state an access-to-courts claim because appointment of counsel is sufficient to provide a pretrial detainee with meaningful access to courts." (citations and internal quotation marks omitted)); *see also Diaz*, 532 F. App'x at 63 (explaining that plaintiff could not assert access-to-courts claim because, *inter alia*, he was represented by counsel); *Falzerano v. Collier*, 535 F. Supp. 800, 803 (D.N.J. 1982) (concluding that pretrial detainee's inability to access law library was not constitutional violation where he had public defender services available to assist in his criminal defense); *Roman v. Union Cnty. Jail*, Civ. A. No. 16-1049 (ES), 2017 WL 498715, at *5 (D.N.J. Feb. 7, 2017) (denying access-to-courts claim for pretrial detainee to extent plaintiff was represented by counsel in his criminal proceedings); *Hurdle v. Dantos*, Civ. A. No. 20-5595, 2020 WL 6747293, at *6 (E.D. Pa. Nov. 17, 2020) (denying claim for access to legal research in part because pretrial detainee was represented by counsel). Accordingly, the court will dismiss with prejudice. Pumba's access-to-courts claim.[6]

---

[6] A district court should generally provide a *pro se* plaintiff with leave to amend unless amending would be inequitable or futile. *See Grayson v. Mayview St. Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002) (stating general rule). Also, "in civil

### 2. Claims Based on Use of Telephone

Pumba again alleges that Leedbetter violated his First and Fourteenth Amendment rights when he prohibited Pumba from using the telephone while he was placed on disciplinary segregation. With respect to this claim, this court previously explained that

> [w]ith regard to an inmate's use of the telephone, although prisoners may have a limited First Amendment right to communicate with family and friends, *see Overton v. Bazzetta*, 539 U.S. 126, 131–32 (2003), "prisoners 'ha[ve] no right to unlimited telephone use, and reasonable restrictions on telephone privileges do not violate their First Amendment rights." *Almahdi v. Ashcroft*, 310 F. App'x 519, 522 (3d Cir. 2009) (per curiam) (quoting *Washington v. Reno*, 35 F.3d 1093, 1099–00 (6th Cir. 1994)). "[A] prisoner's right to telephone access is 'subject to rational limitations in the face of legitimate security interests of the penal institution.'" *Id.* (quoting *Strandberg v. City of Helena*, 791 F.2d 744, 747 (9th Cir. 1986)). Moreover, where there are alternative means of communicating with persons outside of the prison, such as in person visits or mail, the restrictions on telephone use are more likely to be considered reasonable. *See id.* ("Despite Almahdi's statement to the contrary, regulations limiting telephone use by inmates have been routinely sustained as reasonable. Moreover, in this case, the telephone restrictions were implemented because Almahdi was under investigation for telephone abuse, and he had already committed two telephone-related infractions. Under these facts, we cannot conclude that the restrictions were an unreasonable method of furthering the penological interests in maintaining security and discipline. Moreover, Almahdi makes no assertion—and there is no evidence—that he lacked alternative means of communicating with persons outside the prison." (internal citation omitted)); *Ortiz-Medina v. Bradley*, No. 1:19-cv-2133, 2020 WL 362697, at *5 (M.D. Pa. Jan. 22, 2020) (explaining that "inmates "ha[ve] no right to unlimited telephone use." [W]here a prisoner has access to alternative means of communicating with family and friends outside of prison, such as via the mail or in person visits, restrictions on telephone use are viewed as less serious and are more likely to be found reasonable." (alterations in original) (citations and internal quotation marks omitted)); *Graf v. Lanigan*, Civ. No. 14-2613 (RBK) (AMD), 2016 WL 324946, at *2 (D.N.J. Jan. 27, 2016) ("Thus, as Mr. Graf has alternative means to communicate with his family and friends, even those who do not have a landline telephone number, his First Amendment rights are not violated by the NJDOC's policy." (citation omitted)).

July 14, 2022 Mem. Op. at 9–10.

---

rights cases district courts must offer amendment—irrespective of whether it is requested—when dismissing a case for failure to state a claim unless doing so would be inequitable or futile." *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 252 (3d Cir. 2007). Here, the court already provided Pumba with an opportunity to cure the defects in his access-to-courts claim, any further amendment would be futile.

Here, Pumba now alleges that for 17 months, he has had no ability to make or receive telephone calls, have a visitor, send or receive mail, or otherwise communicate with friends or family. Pumba also asserts that Leedbetter denied multiple requests from Pumba for a visit, phone call, or for access to the mail. Based on these allegations, Pumba has stated a plausible First Amendment claim against Leedbetter.

Although Pumba has stated a plausible First Amendment claim against Leedbetter, he also purports to assert this claim against the other named defendants. Unlike his claim against Leedbetter, Pumba has failed to state a plausible claim against the other defendants. As for Mette and Warden Miller, Pumba does not allege that they were ever personally involved in the alleged violation of his First Amendment rights. As for Warden Russell, Pumba merely alleges that he "tried to contact [Warden] Russell about it" but does not say whether the contact was successful or if Russell acted on it in any way. *See* Am. Compl. App. at ECF p. 5. This is insufficient personal involvement. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998) (observing that section 1983 plaintiff must allege personal involvement of each defendant in alleged constitutional violation); *see also Dooley v. Wetzel*, 957 F.3d 366, 375 (3d Cir. 2020) ("Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'" (quoting *Rode*, 845 F.2d at 1207)). Moreover, to the extent Pumba's claim against Warden Russell is based solely on his involvement in Pumba's grievance, such a claim is not viable because participation in the grievance process does not, without more, establish involvement in the underlying constitutional violation. *See Curtis v. Wetzel*, 763 F. App'x 259, 263 (3d Cir. 2019) (per curiam) ("The District Court properly determined that Defendants . . . who participated only in the denial of [the plaintiff]'s grievances – lacked the requisite personal involvement [in the conduct at issue.]"). Accordingly, the court will direct that Pumba's First Amendment claim based

on his restricted telephone use be served only on Leedbetter for a responsive pleading. The court will also dismiss with prejudice this claim against Mette, Warden Miller, and Warden Russell because the court finds that further amendment of the operative complaint would be futile.

### 3. Claims Based on Conditions of Confinement[7]

Pumba again asserts an Eighth Amendment conditions-of-confinement claim against Warden Russell and Warden Miller, who Pumba alleges "intentionally" placed him in the punishment cell for five months. "To determine whether prison officials have violated the Eighth Amendment, [courts] apply a two-prong test: (1) the deprivation must be 'objectively, sufficiently serious; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities'; and (2) the prison official must have been 'deliberate[ly] indifferen[t] to inmate health or safety.'" *Porter v. Pa. Dep't of Corr.*, 974 F.3d 431, 441 (3d Cir. 2020) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). Regarding the first prong, necessities include food, clothing, shelter, medical care, and reasonable safety. *See Tillman v. Lebanon Cnty. Corr. Facility*, 221 F.3d 410, 418 (3d Cir. 2000) ("[W]hen the government takes a person into custody against his or her will, it assumes responsibility for satisfying basic human needs such as food, clothing, shelter, medical care, and reasonable safety." (citing *DeShaney v. Winnebago Co. Dep't of Soc. Servs.*, 489 U.S. 189, 199–200 (1989))). As for the second prong, a prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. Only conditions of confinement that "cause inmates to ensure

---

[7] Based on a grievance Pumba filed with his initial complaint, *see* Doc. No. 2 at ECF p. 5, his conditions-of-confinement claim is based on events that occurred after he was sentenced. Accordingly, the Eighth Amendment, rather than the Fourteenth Amendment, governs his claim. *See Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir. 2005).

such genuine privations and hardship over an extended period of time" violate the Eighth Amendment. *Hubbard*, 538 F.3d at 233 (citation and internal quotation marks omitted).

In this case, Pumba alleges that for five months he was in complete darkness and had no light in his cell. He further alleges that the cell had no heat and was "freezing" cold during winter months. In addition, Pumba states that Warden Miller placed him in this "punishment cell" with the consent of Warden Russell. Based on these allegations, Pumba has stated a plausible Eighth Amendment claim against Warden Miller and Warden Russell. *See Rode*, 845 F.2d at 1207; *see also Stokes v. Cywinski*, No. 03-1544, 2006 WL 952385, at *3 (M.D. Pa. Apr. 12, 2006) ("With regard to supervisors, personal involvement can be shown when violations occur with the supervisor's knowledge and consent.").

### III. CONCLUSION

For the foregoing reasons, the court will dismiss Pumba's amended complaint in part with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). The following claims are dismissed with prejudice: Pumba's First Amendment access-to-courts claim; all claims against Mette; and the First Amendment telephone restriction claim against Warden Russell and Warden Miller. The court will not permit Pumba to further amend these claims. Additionally, the court will direct that Pumba's First Amendment telephone restriction claim against Leedbetter and the "punishment cell" conditions-of-confinement claim against Warden Russell and Warden Miller be served.

The court will enter a separate order.

BY THE COURT:

/s/ *Edward G. Smith*
EDWARD G. SMITH, J.